UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHIRSTI DIVISION

United States Courts
Southern District of Texas
FILED

OCT 2 4 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § | Case No. 2:14-CR-00337-1 |
| v. | § | *USM Number: 65432-379* |
| | § | <u>Before Hon. Nelva Gonzales Ramos</u> |
| | § | |
| | § | |
| JOEL GONZALEZ, | § | |
| *Defendant.* | § | |

## MOTION FOR EARLY TERMINATION OF
## SUPERVISED RELEASE

**NOW COMES** JOEL GONZALEZ, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 United States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the same rule of criminal procedure, no hearing is requested in this matter.

This document complies with LR10, and what follows is a concise memorandum of case history, points of authority, and argument to justify the request sought herein.

1. **Case History:** On November 19, 2014 I was sentenced to 24 months in prison after pleading guilty to one count of Conspiracy to Bribe a Public Official, a violation of 18 U.S.C. §371 and §201(b)(2). Dkt. Ent. 62. I was sentenced to 3

years of supervised release after my release from Bureau of Prisons (BOP) custody, with mandatory and standard conditions of release, and the additional condition that I participate in a program to address my substance abuse issues and history.

2. I was released from custody of the BOP to the jurisdiction of the United States Probation Office here on September 22, 2016, 25 months ago. I now have 11 months on supervision outstanding. I make this request after learning that it is my right to file a request for early termination and that I have been in compliance ever since release.

3. **Jurisdiction**: This Court had and maintains jurisdiction of this case from pretrial, and now during my supervision phase.

4. **Authority**: This Court is granted the authority to terminate a term of supervised release by 18 U.S.C. §3583(e)(1) which, after considering specific sentencing factors from §3553(a), allows a district court judge to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure … if it is satisfied that such action is warranted by the conduct of the defendant released and in the interests of justice."

5. Paraphrased, the §3553(a) factors that are to be considered for an early termination request are:

   - §§(a)(1): The nature and circumstances of the offense;
   - §§(a)(2)(B): To afford deterrence to criminal conduct;
   - §§(a)(2)(C): To protect the public from future crimes;
   - §§(a)(2)(D): To provide education and job training, provide medical care or other correctional treatment;
   - §§(a)(4): The kinds of sentences available in the guidelines;
   - §§(a)(5): In line with relevant policy;
   - §§(a)(6): Avoiding unwarranted differences in sentence between similar defendants with similar conduct;
   - §§(a)(7): To provide restitution to any victims.

6. The applicable Federal Rule of Criminal Procedure is 32.1(c), which allows for modifications of supervised release. This rule requires a hearing unless the relief sought is favorable to the defendant and that an Assistant United States Attorney has received notice of the relief sought and is given reasonable opportunity to object (Fed R. Crim P (2)(B) & (C)).

7. Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it chooses to do so.

8. **Controlling Precedent**: "On a former prisoner's motion, a court may terminate a term of supervised release after one year of supervised release if the "interest of justice" and the defendant's conduct warrant it." *United States v. Boston, 08-10341* (5th Cir. 2011). In considering a request for early termination, "After weighing [the expressed §3553(a)] factors, the court may discharge the defendant from supervised release...In sum, the statute confers broad discretion." *United States v. Jeanes,* 150 F.3d 483, 485 (5th Cir. 1998).

9. The Court in *Jeanes* took specific note of the recidivism risk to the community as axiomatic to a petition for early release from supervision. "While lauding his behavior to date, the court was careful to note that problems might arise in the future." *Id.* Later, the *Jeanes* Court addressed the non-punitive nature of supervision thusly, "Rather than being punitive, supervised release is intended to facilitate 'the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct.' Incarceration, to the contrary, does nothing to assist a defendant's transition back into society..." Quoting *United States v. Joseph,* 109 F.3d 34, 38 (1st Cir. 1997). (See also *Johnson v. United States,* 529 U.S. 694, 709 (2000), a Supreme Court clarification of the role of supervision, defining it as the "decompression state" between incarceration and full release.

10. It follows, then, that if there is no risk of re-offense to the community of Southern Texas at large, and if that "decompression period" from *Johnson, id.* is complete, then there is no need for further supervision and the remaining term can and ***should*** be terminated.

11. **Policy**: The relevant section of the Sentencing Guidelines Manual can be found in §5D1.2. The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early termination in appropriate cases, rather than in cases which show "unforeseen circumstances" or "exceptional behavior".

12. These two phrases are used a lot to dissuade district courts from granting early termination requests where defendants have demonstrated no further need for supervision. They come from an opinion from the Second Circuit in <u>United States v. Lussier</u>, 104 F.3d 32 (2nd Cir. 1997), and since the 2011 changes to the guidelines manual, policy has shifted away from this arbitrary and high bar.

13. "The guidelines encourage . . . [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then

terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[1] U.S.S.G. §5D1.2 cmt. n. 5 (Internal quotations omitted).

14. Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109[2]. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they **"should consider the suitability of early termination for offenders as soon as they are statutorily eligible."**

15. When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

> *(1) Stable community reintegration;*
> *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*
> *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*
> *(4) No history of violence;*
> *(5) No recent arrests or convictions;*
> *(6) No recent evidence of alcohol or drug abuse;*
> *(7) No recent psychiatric episodes;*

---

1 From "Primer: Supervised Release" (Office of General Counsel, United States Sentencing Commission; 2015). Available at: https://www.ussc.gov/sites/default/files/pdf/training/primers/2015_Primer_Supervised_Release.pdf
2 Guide to Judiciary Policy, Volume 8, Part E: Supervision of Federal Offenders (Monograph 109)

> *(8) No identifiable risk to the safety of any identifiable victim; and,*
> *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

16. Later in that same section it states that the existence of outstanding financial obligations *per se* does not adversely affect early termination eligibility (§§c), and failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d), and there is <u>a presumption in favor of recommending early termination</u> for probationers and supervised releasees who have been supervised for at least 18 months and are not violent, drug, sex offenders, terrorists, present a risk to public or victims, and are free from any moderate or higher violations.

17. **Argument:** Of all the sentencing factors from §3553(a) that are considered at original judgment, one is conspicuously missing from the list in §3583(e)(1): "the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[3] That means that supervised release is not part of the punishment phase of a judgment, but serves other intentions of sentencing. This is evinced by the clarity given by the sentencing commission in §5D1.2, citing rehabilitation completion as a valid reason for terminating a term of supervision early.

---

3  18 U.S.C. §3553(a)(2)(A)

18. The Supreme Court clarified this in *Johnson V. United States*, 529 U.S. 694, 709 (2000), when supervised release was described as the "decompression stage" of a judgment. See also *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015). If, then, the transition or decompression from incarceration, and there are no other goals of supervision (or special conditions of supervision) left to achieve, then the purpose of supervision has been exhausted and early termination is warranted. The interests of justice are served, by statutory definition and precedent, by early release in these situation.

19. Regarding §3553(a)(2)(B) & (C), I am of low risk to re-offend. Not only am I committed to a life free of criminal conduct, prosecution, and incarceration, but there are statistics beyond the USPO risk-assessment tool that points to this conclusion. Beyond criminal history categories, criminal-history points themselves are an excellent indicator of the risk of recidivism and re-arrest. A 2017 study published by the Sentencing Commission concludes, specifically, offenders with zero criminal history points and no prior contact with the criminal justice system, "there is an 11.7 percentage point difference [lower] in rearrest rates..." compared to a zero-point offender with prior contact with criminal justice Zero-point offenders show a much lower re-conviction rate (17.4%), almost 4x less likely than an offender with 15+ points (66.2%)[4] I was sentenced with zero

---

4 *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* ; United States Sentencing

Criminal History Points and a Criminal History Category of I, placing me in the category of offenders who have the lowest risk of recidivism.

20. Second, the effect of early termination, as requested in this motion, reduces my likelihood to recidivate. A recent recidivism study by the AOUSC-OPPS examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the 36-month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts. Not only were early-term offenders charged with a new criminal offense at a lower rate than full-term offenders, they were charged with proportionally fewer felonies..."[5]

21. Data accumulated by the Sentencing Commission and released in a report just this year show that, in terms of the age of released offenders, I am in the lowest likelihood of any offender category or of *any* metric to return to prison. Offenders over 60 at sentencing are shown to have a reincarceration rate of 5.7%, and

---

Commission, 2017, available at [http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf]

5   See James L. Johnson, *Are Early Terminated Offenders a Greater Risk to the Community? NEWS AND VIEWS, Vol. XXXV, No. 2, at 1 (Jan 18, 2010)*. Published by AOUSC-OPPS

offenders over 60 at the time of their release are marginally higher at 6.6%. Numerous studies show that age is one of the most reliable predictors of recidivism rates. Nationally, prisoners between the ages of 18 and 29 experience a recidivism rate of over 50%, while those 55 or older experience a rate of only 2%."[6] At 50 years old, I am among the lowest threat to society of any released offender.[7]

22. On May 31, 2018 I received notice that I was designated as 100% disabled from the United States Veteran's Association (VA). This was due to my Post-Traumatic Stress Disorder (PTSD) and associated alcohol and cocaine use that accompanied my terrible coping skills for the PTSD. I've been rebuilding my life since my arrest and conviction, including formal therapy with the VA and completion of the Nonresidential Drug Abuse Treatment Group in July of 2015, while I was in the custody of the BOP. I have no needs that the probation office could further help with insofar as employment or mental health improvement. I am where I need to be and getting the help I need.

23. I also do not have any medical or housing concerns that would make further supervision necessary. Thus, §3553(a)(2)(D) weighs in favor of this request.

---

[6] U.S. Department of Justice Bureau of Just ice Statistics, Trends in State Parole, 1999 – 2000.
[7] Recidivism Among Federal Offenders: A Comprehensive Overview, Appendix A-3. (United States Sentencing Commission, 2016). Available at: *http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf*

24. Of the three years that statute allows as a maximum sentence of supervised release for my Class C/D -type felony, I have already served over two years. Given that I must complete one year before making this type of request, I am well within the appropriate ranges for this request to be considered ripe. These ranges are reflected in policy in U.S.S.G. 5D1.2(a)(2). §3553(a)(4) & (5).

25. To stay in line with sentencing decisions in similar cases with similar defendants, §3553(a)(6) addresses the need to avoid unwarranted disparities between cases with such similarities. In regards to my request here, other cases where early termination requests have been granted are of particular applicable. See *United States v. Reeves*, No. 3:02-CR-108-12 (TXND, 2013 release) where defendant Reeves was terminated after serving two of her 5 year term of supervision for a conspiracy case. See also *United States v. Denton*, No. 3:11-CR-02367 (TXWD (El Paso), 2017 release order).

26. I have paid all of my financial obligations, and owe nothing left on this case besides the next 11 months of my time. §3553(a)(7).

27. A look at the Monograph 109 test for the USPO to consider recommendations on requests for early termination of supervised release addresses many of the same issues from §3553, but from a more integration related standpoint.

28. Reintegration into my community hasn't been easy or fast, but it has been achieved. I have a wonderful and supportive wife, Lisa, who has been a rock of support through this entire case. We have been married now for 29 years and have two amazing children: Alexandra (28) and Joshua (20). Alexandra and her fiancee are living with my wife and I currently, getting on their financial "feet" as they prepare to start their lives together with my granddaughter. My son is in college and working hard in the industrial building materials business.

29. My life is full of great and positive support from my family and friends, not to mention the support and healing I get with the VA and my sobriety. I've accomplished all the goals set for me on supervision, and long-since completed the only special condition this Court placed on me for supervision: sobriety and drug rehabilitation.

30. I pose no risk of danger to any victims in my case and I am of no risk to public safety, although probation's Risk Prediction Index is not at my disposal to comment on this particular scoring method.

31. I wish nothing more than to put this chapter in my life behind me. I made many mistakes and poor decisions while trying to fund my addiction, run from my

mental health issues, and attempt to look like I had my life together. It feel apart in spectacular fashion, for which nobody but myself is to blame. I took and continue to take responsibility for those decisions and only ask that this Court allow me to close this chapter of my life, to move on to the next.

## CONCLUSION

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this 22 day of October, 2018.

/s/ _____
JOEL GONZALEZ
*Pro Se* Defendant, Movant

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, JOEL GONZALEZ, do hereby certify that I have served a true and correct copy of the following document,

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

upon the court and the office of the United States Attorney:

**Mark W Patterson**
Office of the US Attorney
800 N Shoreline Blvd
Suite 500
Corpus Christi, TX 78401

**Clerk of the U.S. District Court**
Criminal Filings
1133 N. Shoreline Blvd
Corpus Christi, TX 78401

by placing it in a sealed, postage prepaid envelope by United States Postal Mail on the 22 day of October, 2018.

_____
JOEL GONZALEZ
*Pro Se* Movant